# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| SANDRA SEEGARS-HOLMES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION FILE |
| v. ) | |
| ) | NO. |
| A.W. HOLDINGS, LLC, ) | |
| An Indiana Corporation, D/B/A ) | |
| BENCHMARK HUMAN SERVICES, ) | |
| GINGER SUNBOM and JOSEPH ) | |
| DARLING, ) | JURY TRIAL DEMANDED |
| ) | |
| Defendants. ) | |
| ) | |

## COMPLAINT

COMES NOW SANDRA SEEGARS-HOLMES, Plaintiff herein, and files her Complaint seeking damages, declaratory and equitable relief against Defendants A.W. HOLDINGS, LLC, An Indiana Corporation, D/B/A BENCHMARK HUMAN SERVICES, GINGER SUNBOM and JOSEPH DARLING, and shows as follows:

## PARTIES AND JURISDICTION

1. Sandra Seegars-Holmes, Plaintiff, brings claims against her former employer and two former supervisors based upon the unlawful termination of her

employment. Plaintiff asserts claims for race discrimination under Title VII, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. §1981, and violations of the Family and Medical Leave Act, 29 U.S.C. §2601 *et seq.*

2. Ms. Seegars-Holmes resides within the State of Georgia. She was employed by Benchmark Human Services ("Benchmark") in its Gainesville facility beginning in February 2016 through the termination of her employment.

3. A.W. Holdings, LLC d/b/a Benchmark is an Indiana Corporation which provides support, healthcare and related services to disabled individuals in a number of states. Benchmark operates several facilities throughout the State of Georgia, including the Gainesville location. Benchmark is subject to service of process on its registered agent, CT Corporation System, 289 Culver Street, Lawrenceville, GA 30046.

4. Ginger Sunbom is employed as Assistant State Director for Benchmark, and was so employed at all relevant times. Sunbom is subject to service of process at her residence, 110 Baskins Road, Lakeland, Lowndes County, GA 30635.

5. Joseph Darling was employed at all relevant times as Regional Director, and was Ms. Seegars-Holmes' direct supervisor. Darling is subject to service of process at his residence, 98 Eagle Rest Road, Dahlonega, Lumpkin County, GA 30533.

6. Jurisdiction is invoked pursuant to 28 USC § 1331 as the claims herein present a federal question.

7. Venue is proper in this Court under 28 USC § 1391 because Defendants conduct business and/or reside in this District and the unlawful actions and practices set forth herein were committed within the Northern District of Georgia.

8. Plaintiff timely filed a Charge of Discrimination asserting claims for race discrimination in violation of Title VII.

9. This action is timely brought within ninety (90) days of Plaintiff's receipt of a Notice of Right to Sue from the EEOC.

10. All administrative requirements and conditions precedent to maintenance of this action have been satisfied.

## BACKGROUND FACTS

11. Plaintiff, who is African-American and mixed race, began working for Benchmark as a Licensed Practical Nurse ("LPN")/House Manager in Benchmark's Gainesville facility on February 8, 2016.

12. Prior to her employment at Benchmark, Plaintiff had a successful career as an LPN with a number of employers over the course of 30 years. She had never been disciplined, suspended or terminated by any employer during this time.

13. Benchmark operates a number of programs on behalf of the State under contracts with the Georgia Department of Behavioral Health and Developmental Disabilities.

14. Benchmark's facilities in Georgia, and at the Gainesville house in particular, were poorly managed, disorganized, and chronically short-staffed during Plaintiff's employment.

15. Benchmark routinely violated standards and regulations pertaining to the services it performed for the State. For example, Benchmark routinely requested and received reimbursement based upon staffing levels which were not met.

16. Staff turnover has been very high at all relevant times, particularly in "direct support staff" and other lower-level positions.

17. The Gainesville facility at which Plaintiff was employed was not operated according to the same policies and procedures as other facilities.

18. Regional Director Joe Darling, Caucasian, regularly reminded staff that he was their direct supervisor, and that operations should be conducted according to his instructions, rather than company mandates. Darling explained that this was necessary because the "company is so confused and disorganized" and that there were "too many chiefs" giving instructions.

19. Plaintiff's assigned duties, and the job duties of other staff, were changed by Darling to attempt to address this corporate disfunction.

20. Darling recognized that the severe problems with turnover in Gainesville required Plaintiff to spend inordinate amounts of time in processing terminations, applications and hiring paperwork. Plaintiff often had as many as 70-80 applications to process during a week, in addition to her other duties.

21. Due to the amount of time Plaintiff spent on hiring activities, Darling relieved Plaintiff of job duties related to inventory, tracking and administration of medication.

22. Registered nurse Sheila Canada, Caucasian, was assigned primary responsibility for these types of duties related to medication. Ms. Canada was hired to replace Gary Johnson, who also performed these functions.

23. Plaintiff was expected to be a secondary "back-up" in supervising the administration and tracking of medication when Canada was not available. However, Canada was frequently resentful when Plaintiff offered any assistance with regard to medication, and insisted that direct support staff allow her to supervise this function.

24. Defendant Sunbom, Caucasian, was promoted to the position as Assistant State Director some months after Plaintiff was first employed at Benchmark.

25. Sunbom was often rude to, and dismissive of, Plaintiff. Other staff commented to Plaintiff that Sunbom didn't seem to like her.

26. Sheila Canada informed Plaintiff that she had been present at a discussion with Ms. Sunbom at the Benchmark facility in Acworth, Georgia in which Sunbom described Plaintiff as a "loud, ghetto Black."

27. Sunbom stated that Benchmark always had problems with Blacks.

28. According to Canada, Sunbom had stated that Benchmark wouldn't hire any more "niggers" in Region 1, which included Gainesville.

## SUSPENSION AND TERMINATION

29. From February 2016 through May 2018, Plaintiff received no discipline of any kind. Her annual performance evaluations were all satisfactory.

30. In late 2017, Plaintiff's son was seriously injured in an automobile accident. Over the next several months, Plaintiff was often absent to care for her son and in order to drive him to seek medical treatment.

31. In addition, Ms. Seegars-Holmes required emergency surgery in March 2018, which resulted in continuing treatment and medication.

32. During this time, Ms. Seegars-Holmes spoke to HR Director Betty Holloway about the possibility of taking Family and Medical Leave Act ("FMLA") leave.

33. Ms. Seegars-Holmes and Defendant Darling discussed the issue, and he discouraged her from pursuing her right to FMLA leave.

34. Darling told Plaintiff she shouldn't apply for FMLA protection, but rather that he would allow her absences as needed.

35. On April 19, 2018, Plaintiff told Darling that she was unable to drive to an annual training due to her health condition and medication. She provided a note from her physician verifying this restriction.

36. Darling told Plaintiff that her inability to attend this training "shouldn't be a problem". Darling suggested that Christy Sellers could provide the training at Gainesville when she visited the facility.

37. On May 2, 2018, Plaintiff was suspended for ten days for her failure to attend a meeting to discuss a work improvement plan and her requests for reasonable accommodations.

38. Darling told Plaintiff that Sunbom forced him to issue the suspension because she didn't like Plaintiff. Darling said Sunbom felt Plaintiff was too loud. Darling said he was afraid it might be because Plaintiff was a "person of color".

39. While Plaintiff was out on suspension, Benchmark purportedly began an investigation into medication issues in Gainesville.

40. Darling and others were well aware prior to this time that there were numerous procedural violations regarding medication handling and administration in Gainesville. Seegars and direct support staff members had discussed this with him multiple times.

41. On or about May 19, 2018, Darling completed Plaintiff's annual evaluation, in which he rated her as meeting performance standards in all but two areas. Darling indicated in his comments, "this year's review was impacted by employee's son's head injury in the fall and the employee's emergency surgery in March."

42. Benchmark terminated Plaintiff's employment on or about June 5, 2018.

43. Benchmark indicated the reason for termination was violation of policies regarding "medication supervision, handling, recording, and dispensing."

44. Following her termination, Darling told staff members he did not agree with the termination of Plaintiff.

45. In Benchmark's communications with EEOC in response to Plaintiff's charge of discrimination, it falsely asserted that these alleged medication issues were discovered during the course of a "routine, quarterly, medication audit."

46. In reality, Canada's long-standing and well-known failure to comply with medication procedures was used as a pretext to target Plaintiff for termination.

## COUNT I—TITLE VII

47. Plaintiff reasserts and incorporates by reference the allegations set forth in Paragraphs 1-46 as though fully set forth herein.

48. Benchmark was Plaintiff's employer within the meaning of Title VII. Benchmark employed more than 15 employees at all relevant times. Benchmark is subject to the prohibitions on race discrimination set forth in Title VII.

49. Plaintiff was subjected to disparate treatment based upon race.

50. Plaintiff was terminated for violation of medication policies and procedures. Sheila Canada, Caucasian, was responsible for these issues, and was not terminated.

51. Plaintiff was terminated based upon her race and replaced by a Caucasian.

52. The reason Benchmark offered for Plaintiff's termination was pretextual.

53. Plaintiff is entitled to damages for Benchmark's Title VII violations including back pay and benefits, emotional distress damages, attorneys fees and costs, as well as injunctive and declaratory relief.

## COUNT II—42 U.S.C. § 1981

54. Plaintiff reasserts and incorporates by reference the allegations set forth in Paragraphs 1-46 as though fully set forth herein.

55. Plaintiff qualifies as a racial minority as Black and mixed race.

56. Defendants Benchmark, Sunbom and Darling each intentionally discriminated against Plaintiff on the basis for race through participation in discipline and the termination of Plaintiff's employment.

57. The termination of Plaintiff's employment based upon her race was in violation of 42 U.S.C. §1981 as discrimination in the making and enforcement of contracts.

58. Plaintiff is entitled to damages against Defendants for violations of 42 U.S.C. §1981 and 42 U.S.C. §1981a in an amount to be shown at trial, attorneys' fees and costs, as well as declaratory and injunctive relief.

## COUNT III—FAMILY AND MEDICAL LEAVE

59. Plaintiff reasserts and incorporates by reference the allegations set forth in Paragraphs 1-46 as though fully set forth herein.

60. Benchmark is a covered employer subject to the requirements of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*("FMLA"). Benchmark employs more than 50 employees within a 75-mile radius of the Gainesville location.

61. Plaintiff was an eligible employee entitled to leave under FMLA. Plaintiff had worked for Benchmark more than 12 months, had worked at least 1250 hours during the past 12 months.

62. Plaintiff was entitled to FMLA leave based upon her own serious health condition, and due to her need to care for a family member with a serious health condition.

63. Defendant Benchmark failed to offer leave under FMLA, but rather discouraged Plaintiff from applying for FMLA protection.

64. Defendant interfered with Plaintiff's rights under FMLA by failing to offer leave, and then imposing discipline based upon events which occurred while the leave period would have been in place.

65. Defendant Benchmark retaliated against Plaintiff due to her efforts to exercise her rights under FMLA by imposing discipline and then terminating her employment.

66. Benchmark's retaliation was caused by Plaintiff's efforts to take a protected leave under FMLA.

67. Plaintiff is entitled to relief due to Benchmark's FMLA violations, including reinstatement, back pay, liquidated damages, equitable relief and other damages.

WHEREFORE, Plaintiff prays as follows:

(a) That she be allowed a trial by jury;

(b) That she be awarded relief under Title VII against Benchmark including damages for back pay, compensatory damages, attorney's fees and costs, injunctive and declaratory relief;

(c) That she be awarded relief under 42 U.S.C. §1981 and 1981a against all Defendants including damages for back pay, compensatory damages, attorney's fees and costs, injunctive and declaratory relief;

(d) That she be awarded damages under FMLA including reinstatement, back pay, liquidated damages, attorney's fees costs and expenses, equitable relief and other damages;

(e) For such other relief as the Court deems appropriate.

Respectfully submitted,

*/s/ E. Linwood Gunn, IV*
E. Linwood Gunn, IV
Georgia Bar No. 315265
*Attorney for Plaintiff,*
*Sandra Seegars-Holmes*

THE GUNN LAW FIRM LLC
244 Roswell Street, Suite 100
Marietta, GA 30060
Phone: 470.508.0020
Email: elg@atldiscriminationlawyers.com

## **CERTIFICATION UNDER L.R. 7.1D**

Pursuant to Northern District of Georgia Local Rule 7.1.D, the undersigned counsel for Plaintiff hereby certifies that the above and foregoing pleading is a computer document prepared in Times New Roman (14 point) font in accordance with Local Rule 5.1B.

So certified this 11th day of December, 2020.

*/s/ E. Linwood Gunn, IV*
E. Linwood Gunn, IV
Georgia State Bar No. 315265
THE GUNN LAW FIRM LLC
244 Roswell Street, Suite 100
Marietta, GA 30060
470.508.0020
elg@atldiscriminationlawyers.com